# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MATEO ALBINA CASTILLO,

    Plaintiff,

  v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

_____/

Case No. 1:22-cv-00693-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.  INTRODUCTION

Plaintiff Mateo Albina Castillo ("Plaintiff") seeks judicial review of a final decision of the Acting Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  FACTUAL BACKGROUND

On September 23, 2019, Plaintiff protectively filed an application for SSI payments, alleging he became disabled on March 23, 1996, due to anxiety, stress, hepatitis C, and his thirty-year incarceration period. (Administrative Record ("AR") 16, 118, 119, 123, 132, 133, 152, 166, 251–

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

52, 256–65, 276, 291, 317, 325.) He thereafter amended his alleged date of disability to September 23, 2019, the date of filing. (*See* AR 16, 241.)

Plaintiff was born on February 5, 1959, and was 60 years old on the date the application was filed. (AR 28, 118, 132, 291, 317, 325.) He has at least a high school education and can communicate in English. (AR 28, 44, 104.) Plaintiff has no past relevant work. (AR 28, 88, 103.)

**A.     Relevant Evidence of Record[2]**

Plaintiff presented for a medication management appointment in January 2018. (AR 364.) He reported his depression and anxiety were "much improved" with medication. (AR 364.) In June 2018, Plaintiff again reported his depression, anxiety, and stress were "improved" with medication. (AR 358.) He presented as well-groomed and fully oriented, with organized thought processes, grossly intact cognition, and "good" mood. (AR 378.)

In September 2018, Plaintiff was scheduled for a psychiatric evaluation but did not show up. (AR 370.) Plaintiff reported "feeling stressed" in October 2018 and that he "will go to Mexico for vacation." (AR 352.) He admitted drinking alcohol two times pers week, consuming three to five beers each time. (AR 371.) The provider noted that his depression, anxiety, and stress are all improved with medication, but that he had not submitted for toxicology substance screening tests. (AR 352.) Plaintiff presented as well groomed, with grossly intact cognition, full orientation, and organized thought processes. (AR 352.) He was assessed with major depressive disorder, antisocial personality disorder, substance-induced disorder, and anxiety. (AR 535.)

Plaintiff reported in December 2018 having had a "good vacation in Mexico visiting family." (AR 393.) His depression and anxiety were "improved with treatment." (AR 393.) It was noted that Plaintiff continued to refuse a drug rehab program. (AR 393.) He demonstrated grossly intact cognition, congruent mood, and linear and goal directed thought processes. (AR 350.)

Plaintiff presented for a medication progress appointment in February 2019. (AR 390.) His mental status examination was the same as before, with good grooming, normal motor activity and sensorium, grossly intact cognition, normal orientation, and organized thought processes. (AR 390.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

In April 2019, Plaintiff presented for a follow up medication progress appointment. (AR 386.) Upon mental status examination, he was well-groomed and cooperative, showing grossly intact cognition, organized thought processes, and congruent mood. (AR 386.)

Plaintiff presented for another medication progress appointment in August 2019. (AR 378.) The provider noted that Plaintiff is an "[a]ntisocial male with polysubstance abuse disorders and opiate use disorders with a history of daily methadone use." (AR 379.) They observed that Plaintiff's insight and judgment were "[r]elatively improved when using less substances." (AR 378.) Plaintiff reported at the appointment that outpatient treatment is "helpful for him." (AR 379.)

In February 2020, Plaintiff reported that his medication "help[ed] calm his anxiety." (AR 437.) He stated that he had used heroin "[five] months ago." (AR 437.) That same month, psychologist Jerry R. Livesay conducted a mental evaluation of Plaintiff (AR 421–26), and noted Plaintiff "shows the behavioral profile of prolonged institutionalization" and was cooperative during the assessment (AR 421, 423). Plaintiff presented with a blunted affect, appeared "mildly to moderately anxious," and complained of stress and anxiety. (AR 421.)

During the examination, Plaintiff reported that he had been "treated off and on" for depression and anxiety with medication and "some counseling" the mental health program while incarcerated. (AR 422.) Plaintiff reported that when he was paroled, he continued with outpatient treatment for one year. (AR 422.) He reported that he cares for his personal care needs and prepares sandwiches, but does not do dishes or vacuum. (AR 423.) He occasionally does some yard work and mops the floors once a week. (AR 423.) Plaintiff is unable to go shopping "because he is afraid he might go off on a customer and end up having to go back to prison." (AR 423.) He stated "it is important for him to get out of his house and he enjoys riding buses around the city but finds this [] make[s] him very anxious recently." (AR 423.) He goes to church with his sister and enjoys riding his bike. (AR 421, 423.)

Dr. Livesay observed that Plaintiff presented with goal directed speech and thought processes, intact orientation, an absence of apparent distorted perceptions, and intact ability to follow three-step directives. (AR 423–24.) He found Plaintiff demonstrated impaired concentration, recall, and memory abilities, but with full orientation in all spheres. (AR 423–424.) Dr. Livesay assessed

Plaintiff with generalized anxiety disorder and antisocial personality disorder, and opined that he was capable of simple routine tasks but had marked impairment in his ability to interact with coworkers and the public and in managing stress. (AR 425.)

In April 2020, Plaintiff presented for a medication progress appointment. (AR 430.) It was noted that he had "situational stressors" and was "refusing referral to individual therapy at this time." (AR 431.) He had relapsed on heroin that February. (AR 430.) Plaintiff reported that his medication "is effective for anxiety and his mood." (AR 430.) It was noted that he is "avoidant of others." (AR 430.) Other appointments were attempted that same month, but Plaintiff did not show up. (AR 434, 436.)

Plaintiff presented for another medication progress appointment in May 2020. (AR 427.) He reported "intermittent" auditory hallucinations but "does not feel [it] is an issue." (AR 427.) The provider noted Plaintiff was "calm" and "remains dysthymic with anxiety provoking stressors of financial[,] health, [and] living arrangement." (AR 428.) He "refus[ed] referral to individual therapy" and had "fair to limited" response to medications. (AR 428.)

In November 2020, Plaintiff reported taking Celexa, which he said "helps." (AR 453.) He stated that he drinks beer or will "use meth sometimes" when he is bored. (AR 453.) Plaintiff "occasionally has auditory hallucinations but states they are not so bothersome." (AR 453.) He did "not want to take an antipsychotic mediation." (AR 453.)

In January 2021, Plaintiff reported auditory hallucinations, depression, paranoia, and irritability. (AR 462.) Upon mental status examination, he demonstrated impaired memory, difficulty concentrating, and that he was "suspicious of others' intentions and trustworthiness," but with logical thought flow and full orientation. (AR 464.) He stated that "his only friends are people that live on the streets," who "understand" him. (AR 462.) He reported going to church twice a month. (AR 463.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on March 17, 2020, and again on reconsideration on June 19, 2020. (AR 16, 152–56, 166–72.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 173–220.) At the hearing

on May 12, 2021, Plaintiff appeared with counsel by phone and testified before an ALJ as to his alleged disabling conditions. (AR 42–57.) A Vocational Expert ("VE") also testified at the hearing. (AR 58–62.)

**C.    The ALJ's Decision**

In a decision dated June 24, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 16–30.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18–30.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since September 23, 2019, the application date (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative joint disease of the shoulders, antisocial personality disorder, depression, schizoaffective disorder, substance abuse, and anxiety. (AR 18–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19–21.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except [Plaintiff] can frequently reach overhead bilaterally and kneel. He can understand, remember, and carry out simple, routine, and repetitive tasks for two hours at a time. He can have occasional contacts with co-workers, supervisors, but cannot have any contact with the public.

(AR 21–28.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 29–30.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 58–62.) In response, the VE testified that a person with the specified RFC could perform the jobs of laundry worker, janitor, and store laborer. (AR 59.) When posed with hypothetical that included additional limitations to Plaintiff's RFC of being "likely is able to remain on task no mere than 85 percent of the workday and miss more than 3 days of work a month" or requiring "unscheduled breaks . . . about 4 times throughout the day and last[ing] for 15 minutes each," the VE testified that there was no work such a person could perform. (AR 61, 62.)

The ALJ ultimately concluded Plaintiff was not disabled since September 23, 2019, the application date. (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 4, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.   DISCUSSION**

Plaintiff contends that the ALJ erred in discounting the medical opinion of Dr. Livesay. (Doc. 13 at 7–11; Doc. 15 at 1–4.) The Acting Commissioner responds that the ALJ's consideration of Dr. Livesay's opinion was proper and supported by substantial evidence. (Doc. 14 at 10–13.)

The Court agrees with the Acting Commissioner.

**A.     Legal Standard**

Plaintiff's claim for SSI is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. §

9

416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Livesay's opinion.

**B.     Analysis**

In evaluating Dr. Livesay's opinion related to Plaintiff's mental functioning, the ALJ found that the opined "marked" limitations in Plaintiff's ability to interact with coworkers and the public and marked limitations in managing stress were "unpersuasive," reasoning

> The "marked" impairments in interpersonal interaction and stress management is not supported by Dr. Livesay's clinical interview, which yielded a cooperative approach to the appointment, goal directed speech and thought processes, intact orientation, an absence of apparent distorted perceptions, and intact ability to follow three-step directives. Dr. Livesay's marked limitations are inconsistent with longitudinal mental health records which identify consistent improvement with medication for anxiety, mood stabilization, sleep, and depression; noncompliance with required drug testing and attendance of appointments; and a history of

> expending minimal effort participating in treatment. Marked impairments in social interaction and stress management are inconsistent with [Plaintiff's] active involvement in the community and ability to navigate via transit. It appears per Dr. Livesay's narrative, that these limitations may have been influenced by Dr. Livesay's profiling of [Plaintiff] due to his long incarceration.

(AR 26–27.) The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Livesay's opinion, and rejects Plaintiff's contention that the ALJ did so in a "conclusory" manner. (*See* Doc. 13 at 9.) As to supportability, the ALJ determined that a portion of the opinion was not supported by his clinical interview. As observed by the ALJ (AR 26), during the interview, Dr. Livesay noted that Plaintiff presented with goal directed speech and thought processes, intact orientation, an absence of apparent distorted perceptions, and intact ability to follow three-step directives. (AR 423–24.) The lack of support by Dr. Livesay's own objective findings was a proper consideration in evaluating the supportability of his opined "marked" limitations. *See, e.g., Trezona v. Comm'r of Soc. Sec.,* No. 1:21-CV-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal. May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-01507-YY, 2022 WL 972408, at *7 (D. Or. Mar. 31, 2022).

As to consistency, the ALJ found Dr. Livesay's opinion concerning Plaintiff's interpersonal interaction and stress management was generally inconsistent with the other medical evidence. As cited by the ALJ (AR 23, 24), the record is replete with instances where Plaintiff reported medication improved his symptoms significantly. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). For example, in January 2018, Plaintiff reported his depression and anxiety were "much improved" with medication. (AR 364.) Plaintiff again reported his depression, anxiety, and stress were "improved" with medication in June 2018. (AR 358.) In October 2018, the provider noted that Plaintiff's depression, anxiety, and stress are all improved with medication. (AR 352.) Plaintiff reported in December 2018 that his depression and anxiety were "improved with treatment." (AR 393.) In August 2019, Plaintiff reported at the appointment that outpatient treatment is "helpful for him." (AR 379.) Plaintiff reported in April 2020 that his medication "is effective for anxiety and his mood." (AR 430.) In November 2020, Plaintiff reported taking Celexa, which he said "helps." (AR 453.)

11

The record also shows Plaintiff's lack of compliance with psychological treatment. Plaintiff repeatedly failed to attend appointments. (AR 434, 436.) He refused multiple referrals to individual therapy and rejected antipsychotic mediation. (AR 428, 431, 453.) Plaintiff correctly notes that where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment. (Doc. 13 at 10) (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999)); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Nevertheless, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina v. Astrue*, 674 F.3d 1101, 1113-14 (9th Cir. 2012). Here, although Plaintiff points to evidence showing Plaintiff was "guarded," "suspicious," and "had impaired insight and judgment" (*see* Doc. 13 at 10), he does not demonstrate that his failure to seek treatment was attributable to these symptoms. To the contrary, the record shows that Plaintiff's insight and judgment were "[r]elatively improved" when he was not using illicit drugs, and that he preferred vacation to therapy in alleviating stress symptoms. (AR 352, 376, 378, 380, 442.)

Finally, the ALJ noted the inconsistency between Dr. Livesay's opined marked limitation in interpersonal interaction and Plaintiff's activities of daily living, specifically his "community involvement" and ability to "navigate via transit." (AR 27.) The record shows Plaintiff regularly attends church, as he reported to Dr. Livesay himself. (AR 421, 423, 463.) Plaintiff also stated he enjoys riding buses around the city, albeit he experiences some anxiety while doing so. (AR 423.) *See, e.g., Zalomski v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00417-PHX-MTL, 2022 WL 2816809, at *3 (D. Ariz. July 19, 2022) (ALJ properly found medical opinion inconsistent with Plaintiff's activities of daily living).

Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th

Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'"). The Court does not however concur with Plaintiff that the ALJ committed this error. To the contrary, the Court finds Plaintiff's invitation to focus on records that support that he is "guarded, suspicious, struggled cognitively, and had impaired insight and judgment.," without mentioning the findings therein that undermine those symptoms, the very definition of prohibited cherry-picking. (*See* Doc. 13 at 10 (citing AR 454, 457, 458, 465).) The Court declines to engage in cherry picking, as doing so is incongruous with the intent of the Social Security Act. *See e.g., White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) ("The problem with [plaintiff's] cherry picking argument, however, is that it cuts both ways. She too cherry picks data.").

In sum, while the medical record reflects that Plaintiff has "chronic mental illnesses" (AR 24), it was reasonable for the ALJ to conclude that the record did not support the severity of the restrictions opined by Dr. Livesay. That this portion of the opinion lacked support and was inconsistent with the medical evidence was a legally sufficient finding based on substantial evidence. The fact that Plaintiff's course of treatment, for example, could be interpreted differently has no effect on this Court's ruling. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). *See also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Thus, the ALJ did not err by finding a portion of the opinion of Dr. Livesay not persuasive.

Moreover, Plaintiff does not specify what additional functional limitations resulting from his mental impairments were not accounted for in the ALJ's RFC assessment—indeed, the ALJ accommodated Plaintiff's severe mental illnesses "by limiting him to unskilled work with interpersonal limitations." (AR 24.) Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence.

*See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: __**August 11, 2023**__                    /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE